John C. Clune, Colorado Bar No. 27684
(*pro hac vice* motion forthcoming)
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (303) 442-6514
Fax: (303) 442-6593
E-Mail: clune@hbcboulder.com

L. Lin Wood, Georgia Bar No. 774588
(*pro hac vice* motion forthcoming)
David Ehrlich, Georgia Bar No. 353601
(*pro hac vice* motion forthcoming)
L. LIN WOOD, P.C.
1180 West Peachtree Street, Suite 2400
Atlanta, GA 30309
Telephone: (404) 891-1402
Fax: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Jennifer L. Liu, Cal. Bar No. 279370
THE LIU LAW FIRM, P.C.
324 Day Street
San Francisco, CA 94131
Telephone: (415) 896-4260
Fax: (415) 231-0011
E-Mail: jliu@liulawpc.com

*Attorneys for Plaintiff Elise Clougherty*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELISE CLOUGHERTY,<br><br>             Plaintiff,<br><br>     v.<br><br>JOSEPH LONSDALE; FORMATION8<br>GP, LLC; and FORMATION8<br>PARTNERS, LLC;<br><br>             Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Elise Marie Clougherty ("Ms. Clougherty" or "Plaintiff") alleges as follows:

**PRELIMINARY STATEMENT**

1.      This action arises out of a sexually, emotionally, and physically abusive relationship between Stanford University mentor Mr. Joseph Lonsdale ("Mr. Lonsdale" or "Defendant"), a successful and well-known Silicon Valley entrepreneur-turned-venture capitalist, and Ms. Clougherty, which lasted from February 2012 to February 2013.  At the time of the events described in this Complaint, Ms. Clougherty was an undergraduate student at Stanford University ("Stanford" or the "University") and nearly ten years Mr. Lonsdale's junior.  During the period in question, Mr. Lonsdale continuously and systematically subjected Ms. Clougherty to repeated and incessant sexual assaults and abuse, employing psychological manipulation and coercion in order to confuse, isolate, and otherwise disorient Ms. Clougherty from appreciating the true danger of her situation.

2.      In January 2012, Mr. Lonsdale used his participation in a technology entrepreneurship mentor program at Stanford to hand-pick Ms. Clougherty to be his mentee. Over the course of the next year, Mr. Lonsdale took advantage of his position of power and Ms. Clougherty's youth and trusting personality to draw her into a highly deviant, abusive, and controlling relationship during which he perpetrated hundreds of non-consensual, and often violent, sexual acts upon her.

3.      During the summer of 2012, Mr. Lonsdale hired Ms. Clougherty to be an intern at his technology venture capital firm, Formation8 GP, LLC and Formation8 Partners, LLC (collectively, "Formation 8").  Mr. Lonsdale's position of authority over Ms. Clougherty enabled him to extend his control over her and to continue subjecting her to repeated, non-consensual sexual acts.

4.      In or around February 2013, Ms. Clougherty's family began to suspect that something was terribly wrong with her relationship with Mr. Lonsdale.  They intervened and helped her leave Mr. Lonsdale.  Over the next couple of months, they discovered the true extent

of the deviant and violent abuse she had endured as his supposed girlfriend over the previous year.

5.      In February 2013, Ms. Clougherty and her family reported Mr. Lonsdale's actions to Stanford University.  Stanford retained an outside investigator to investigate her allegations. At the conclusion of the investigation, the outside investigator found that Mr. Lonsdale had engaged in conduct meeting the definitions of sexual harassment and sexual misconduct under Stanford's Title IX policy, and that it was "more likely than not that [Ms. Clougherty] expressed to [Mr. Lonsdale] that she did not want to engage in the sexual conduct in question, but that [Mr. Lonsdale did not comply with [her] request."  As a result of the investigation, Stanford banned Mr. Lonsdale from Stanford's campus for a minimum of ten years.

## JURISDICTION

6.      Ms. Clougherty is an adult female who resides in Vienna, Virginia.

7.      Ms. Clougherty is a citizen of the Commonwealth of Virginia for purposes of diversity jurisdiction under 28 U.S.C. § 1332 and was a Virginia citizen at all times pertinent and relevant to the incidents described in this Complaint.

8.      Upon information and belief, Mr. Lonsdale is an adult male who resides in San Mateo County, in the State of California.  Upon information and belief, Mr. Lonsdale is a citizen of the State of California for purposes of diversity jurisdiction under 28 U.S.C. § 1332 and was a California citizen at all times pertinent and relevant to the incidents described in this Complaint.

9.      Formation8 GP, LLC is a limited liability corporation incorporated in Delaware, with a principal place of business in San Francisco, California.

10.     Formation8 Partners, LLC is a limited liability corporation incorporated in Delaware, with a principal place of business in San Francisco, California.

11.     This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

12.     Defendants are subject to the jurisdiction of this Court pursuant to 28 U.S.C §
1332.

13.     Mr. Lonsdale is subject to the personal jurisdiction of this Court as a citizen and
resident of California.

14.     Formation8 GP, LLC and Formation8 Partners, LLC are subject to the personal
jurisdiction of this Court as their primary place of business is located in San Francisco, California.

## VENUE

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because
Defendants reside in this District and a substantial part of the events giving rise to the claims
occurred in this District.

16.     Intradistrict Assignment:  Pursuant to N.D. Cal. Local Rule 3-2(c) and (e),
intradistrict assignment to the San Francisco Division is proper because a substantial part of the
events that give rise to the claims asserted occurred in San Mateo County and Defendants reside
in San Mateo County.

## THE PARTIES

*Ms. Elise Clougherty*

17.     Ms. Clougherty is the 24 year-old daughter of Patrick and Anne Clougherty, and
the older sister to three brothers.

18.     Ms. Clougherty was raised in Vienna, Virginia, a suburb of Washington, D.C.

19.     Ms. Clougherty graduated from one of the nation's most competitive high schools,
the Thomas Jefferson High School for Science and Technology, where she was one of very few
students to graduate with a straight-A average.  In addition to succeeding academically, she was
also involved in music, was captain of the varsity lacrosse team, and was president of the
National Honor Society.

20.     In addition to being extremely bright, Ms. Clougherty is also very beautiful.  She
is slender, 5'10", and has long, blonde hair and striking facial features.  From approximately age
13 to 20, she worked for Ford Models as a print model.

21.     From a very young age, Ms. Clougherty's appearance has drawn an inordinate amount of unsolicited and often unwanted attention from male onlookers, acquaintances, and friends.  At or around age 10, for example, a male stranger tried to assault and abduct her when she went to use the bathroom of a restaurant.  Through adolescence, Ms. Clougherty continued to experience constant attention from men, often in intimidating and frightening ways.  Ms. Clougherty's parents went to great lengths to shield her from this attention; for example, Ms. Clougherty's mother escorted her on almost every modeling trip Ms. Clougherty took.

22.     Ms. Clougherty also comes from a Catholic family and has always been committed to her faith.  Prior to meeting Mr. Lonsdale, Ms. Clougherty was a virgin.

***Mr. Joseph Lonsdale***

23.     Mr. Lonsdale is a successful and widely-known entrepreneur involved in numerous business ventures and entities.

24.     He is a 2003 graduate of Stanford University.  While at Stanford, he served as the Editor-in-Chief of the Stanford Review, Stanford's conservative/libertarian newspaper.

25.     In 2004, Mr. Lonsdale co-founded Palantir Technologies, a multi-billion dollar data-mining software company.  Mr. Lonsdale has been involved in numerous other successful Internet startups, including PayPal, and has also worked for Clarium Capital, a global macro hedge fund.

26.     In 2009, Mr. Lonsdale founded Addepar, Inc. ("Addepar"), a leader in private wealth management technology.  Upon information and belief, Mr. Lonsdale currently serves as the Chairman of Addepar.

27.     Mr. Lonsdale is also a founding partner at Formation 8, a technology venture capital fund.

28.     At all times relevant to the events described in this Complaint, Mr. Lonsdale was an agent of Formation 8.

29.     Mr. Lonsdale has also served as the founding Chairman of The Seasteading Institute, a non-profit dedicated to creating "floating cities" on the open seas, with independent,

"highly autonomous" governments where residents and entrepreneurs can be "free to operate their own lives and businesses."

***Formation 8***

30.     Formation 8 is a technology venture capital fund founded in 2011.  Formation 8's headquarters are located in San Francisco, California.

**INTIMATE PARTNER VIOLENCE**

***Intimate Partner Violence in the United States***

31.     Intimate partner violence in the United States is a national epidemic.  According to statistics collected by the Centers for Disease Control and Prevention, more than one in three women (35.6%) in the United States has experienced rape, physical violence, and/or stalking by an intimate partner at some point in her life, and nearly one in five (18.3%) has been raped.[1] More than half of all female rape victims (51.1%) report being raped by an intimate partner, as opposed to an acquaintance or stranger.[2]  An estimated 9.4% of all women in the United States have been raped by an intimate partner at some point in their lives.[3]  On average, more than three women a day are murdered by their husbands or boyfriends in the United States.[4]

32.     This epidemic is particularly acute among college-age women.  While women of all ages are at risk for domestic and sexual violence, those ages 20 to 24 are at the greatest risk of experiencing nonfatal intimate partner violence.[5]  One in five women is sexually assaulted in college.[6]

33.     Intimate partner violence is also a silent epidemic.  Intimate partner violence is one of the most chronically underreported crimes.  Studies have estimated that between 64% and 96%

---

[1] Black, M.C., Basile, K.C., Breiding, M.J., Smith, S.G., Walters, M.L., Merrick, M.T., Chen, J., & Stevens, M.R. (2011). The National Intimate Partner and Sexual Violence Survey (NISVS): 2010 Summary Report. Atlanta, GA: National Center for Injury Prevention and Control, Centers for Disease Control and Prevention.  Retrieved from: http://www.cdc.gov/violenceprevention/pdf/nisvs_executive_summary-a.pdf.
[2] *Id.*
[3] *Id.*
[4] Catalano, Shannan. 2007. Intimate Partner Violence in the United States. U.S. Department of Justice, Bureau of Justice Statistics. Available at http://bjs.ojp.usdoj.gov/content/pub/pdf/ipvus.pdf.
[5] *Id.*
[6] http://www.futureswithoutviolence.org/resources-events/get-the-facts/#fn2.

of all rapes are never reported to criminal justice authorities.[7]  Only a small minority of reported cases, especially non-stranger assaults, ever result in the successful prosecution of the offender.[8]

34.     Intimate partner violence is a costly epidemic.  The costs of intimate partner violence against women exceed an estimated $5.8 billion.[9]  These costs include nearly $4.1 billion in the direct costs of medical care and mental health treatment and nearly $1.8 billion in the indirect costs of lost productivity and present value of lifetime earnings.[10]  Victims of rape and sexual assault are 3 times more likely to suffer from depression, 6 times more likely to suffer from post-traumatic stress disorder, and 4 times more likely to contemplate suicide.[11]  Sexual violence victims exhibit a variety of psychological symptoms that are similar to those of victims of other types of trauma, such as war and natural disaster.[12]

**_The Pathology of Abusers_**

35.     The research on sexual violence clearly demonstrates that a vastly disproportionate number of rapes and sexual assaults are committed by a small percentage of the male population—serial sexual predators.[13]  In one study, the average number of victims for each predator was seven; in another study, it was eleven.[14]

36.     Social scientists now understand that sexual predators are not driven primarily by sexual desire.[15]  Rather, they tend to be driven by a need to dominate or control their victims, and/or resentment of and a general hostility against women.[16]  A smaller number of sexual

---

[7] Lisak, David & Paul M. Miller, Repeat Rape and Multiple Offending Among Undetected Rapists, Violence & Victims, Vo. 7, No. 1, 2002, p. 1.
[8] _Id._
[9] National Center for Injury Prevention and Control. Costs of Intimate Partner Violence Against Women in the United States. Atlanta (GA): Centers for Disease Control and Prevention; 2003.
[10] _Id._
[11] National Research Council. (1996). Understanding Violence Against Women. Washington, DC: National Academy Press.
[12] _Id._
[13] Harwell, Claire M. & David Lisak, Why Rapists Run Free, Sexual Assault Report, No. 14, No. 2, Nov./Dec. 2010, p. 17.
[14] Lisak, David, Understanding the Predatory Nature of Sexual Violence, Sexual Assault Report, Vol. 14, No. 4, March/April 2011, p. 55.
[15] _Id._
[16] _Id._

predators are driven by the sexual gratification they experience by inflicting pain on their victims.[17]

37.     The vast majority of sexual predators go unpunished.  Factoring in unreported rapes, only an estimated 3% of rapists will ever spend a day in jail.[18]  The other 97% will walk free, receiving no punishment.[19]

38.     Undetected sexual predators tend to share a common *modus operandi*.[20]  By targeting non-strangers and refraining from unnecessary violence, these sexual predators have largely escaped prosecution.[21]  Sexual predators who succeed at evading detection are extremely adept at identifying suitable victims and testing prospective victims' boundaries; they plan and premeditate their attacks, using sophisticated strategies to groom their victims for attack and to isolate them physically; they use violence instrumentally—that is, they use only as much violence as is needed to terrify and coerce their victims into submission; and they use psychological weapons—power, control, manipulation, and threats—to control their victims.[22]

## STATEMENT OF FACTS

### Ms. Clougherty's Early Life at Stanford

39.     In the fall of 2009, Ms. Clougherty began her freshman year at Stanford.  Although she intended to study neuroscience, she immediately became interested in technology entrepreneurship after a freshman year class on internet start-ups.

40.     Ms. Clougherty was thrilled to be part of the Stanford community and enjoyed student life at Stanford immensely.  However, from very early on, she began experiencing negative unwanted male attention, including stalking and verbal assaults.  Ms. Clougherty and her mother reported two particularly threatening incidents to Stanford authorities.

---

[17] *Id.*
[18] https://rainn.org/news-room/97-of-every-100-rapists-receive-no-punishment.
[19] *Id.*
[20] Lisak, David, Understanding the Predatory Nature of Sexual Violence, Sexual Assault Report, Vol. 14, No. 4, March/April 2011, p. 56.
[21] *Id.*
[22] *Id.*

1

2       41.     These early problems with stalking and harassment led Ms. Clougherty to feel

3  extremely anxious and unsafe.  In the fall of 2010, after she learned that she had been placed in

4  the same residential hall as one of the male students she had reported for harassment, she began to

5  feel increasingly fearful and anxious.  This anxiety triggered Ms. Clougherty to develop an eating

6  disorder, which required her to take several months off of school to receive full-time treatment.

7  After several months, Ms. Clougherty returned to Stanford to resume her studies in the spring

8  quarter of 2011.

9  *Mr. Lonsdale's First Interactions with Ms. Clougherty*

10      42.     In the winter of 2010-11, a mutual acquaintance of Ms. Clougherty's and Mr.

11 Lonsdale's introduced them over email.  Because of Ms. Clougherty's interest in technology

12 entrepreneurship, she was interested in meeting Mr. Lonsdale and emailed him to meet.  In or

13 around January 2011, when Ms. Clougherty was 20 years old, they met at a bar in New York

14 City.  The meeting was extremely brief, lasting approximately fifteen or twenty minutes, during

15 which Mr. Lonsdale paid little attention to Ms. Clougherty.

16      43.     Ms. Clougherty next ran into Mr. Lonsdale in Palo Alto in the spring of 2011, after

17 which Ms. Clougherty and Mr. Lonsdale began corresponding over email about technology

18 entrepreneurship and Internet start-ups.  In October 2011, Ms. Clougherty and Mr. Lonsdale met

19 again at a bar in Palo Alto.  The meeting was brief and ended in Mr. Lonsdale stroking Ms.

20 Clougherty's face and hair and leaning in as if he were going to kiss her, and Ms. Clougherty

21 getting up to walk away.

22      44.     In January 2012, Mr. Lonsdale discovered that Ms. Clougherty was enrolled in a

23 class called High Technology Entrepreneurship—a class in which Mr. Lonsdale had volunteered

24 to serve as a mentor.  Although Ms. Clougherty had already been assigned two mentors, Mr.

25 Lonsdale leveraged his friendship with the professor teaching the class and his influence as a

26 prominent Stanford alumnus to arrange for the professor to reassign Ms. Clougherty as Mr.

27 Lonsdale's mentee.  Mr. Lonsdale later told Ms. Clougherty that after he asked the professor to

28

- 8 -

reassign her to him, the professor told Mr. Lonsdale that Mr. Lonsdale "knew how to pick out the pretty ones."

45.     On or around January 24, 2012, Ms. Clougherty went to meet Mr. Lonsdale at his Addepar office for their first mentor/mentee meeting. When Ms. Clougherty got to his office, she saw that he had a photograph of a half-naked woman prominently displayed on his computer screen. During their conversation, Mr. Lonsdale asked Ms. Clougherty if she knew the woman, alluding to the fact that Ms. Clougherty had been a model.

46.     At their second mentor/mentee meeting, on or about February 3, 2014, Ms. Clougherty and one of her co-mentees met with Mr. Lonsdale at Addepar. Mr. Lonsdale asked for Ms. Clougherty's co-mentee to leave early so that he could meet with Ms. Clougherty alone. He then drove her to the Four Seasons Hotel in Palo Alto, where they sat at the bar. Mr. Lonsdale offered her alcohol—which she refused. While at the bar, Mr. Lonsdale talked about inappropriate sexual topics, including how he had had uncontrollable sexual urges when he was younger. He then drove her back to and dropped her off at her dorm.

***Mr. Lonsdale's Early Abuse of Ms. Clougherty***

47.     In or around February 2012, Mr. Lonsdale used his position of power as Ms. Clougherty's mentor to initiate an intimate relationship with Ms. Clougherty. On the night of their first sexual encounter, Ms. Clougherty believed that Mr. Lonsdale was picking her up from campus to go to dinner in Palo Alto to discuss her team's project. Instead, Mr. Lonsdale drove her back to his home in Los Altos Hills. Shortly after arriving at his house, he started to kiss her aggressively and to try to take off her pants. Despite Ms. Clougherty trying to avoid him and pushing his hands away from her crotch at least a half dozen times, Mr. Lonsdale persisted. Mr. Lonsdale then pulled Ms. Clougherty into a bedroom where he took off her clothes and his pants, and began to penetrate her with his flaccid penis. During this episode, Mr. Lonsdale acted as though he were not doing anything wrong and made comments insinuating that Ms. Clougherty had wanted the sexual contact.

48.      In the days after their first sexual encounter, Mr. Lonsdale showered Ms. Clougherty with gifts and attention:  profusely telling her about his feelings for her, talking about how they would be a "power couple," sending her large, expensive flower arrangements and buying her other gifts, and calling her frequently.  In the following weeks, Mr. Lonsdale repeatedly continued to force Ms. Clougherty to have sexual contact with him without her consent.  From very early on, Mr. Lonsdale repeatedly told Ms. Clougherty that it was women's nature to enjoy being raped, especially if they are raped by a man with greater means.

49.      During this period, Ms. Clougherty began to feel depressed.  She started crying frequently and began to withdraw from her friends.  In March, her roommate abruptly moved out of their dorm room.  The roommate later told Ms. Clougherty that she had wanted to move out because Ms. Clougherty was giving off "too much negative energy."  Around the same time, a male classmate who Ms. Clougherty had been dating also stopped seeing her.  Socially isolated, Ms. Clougherty grew increasingly attached to her abuser and became psychologically trapped, in that she believed she could not leave the relationship and did not understand that her thoughts and feelings were caused by fear and trauma.

50.      In March 2012, knowing that Ms. Clougherty had plans to visit her family in Spain later than month, Mr. Lonsdale invited Ms. Clougherty to join him for several days in London and Rome.  Before the trip, Mr. Lonsdale told Ms. Clougherty that he had booked two hotel rooms – one for him, and one for her.  When Ms. Clougherty arrived in London to meet him, she discovered that he had booked only one room.  In London, Mr. Lonsdale continued to force her to have sexual contact with him without her consent.  Throughout the trip, Mr. Lonsdale deprived her of both food and sleep by scheduling late night and early morning activities, delaying meals, not ordering her enough food, and other such tactics.

51.      On the last evening of the trip, in Rome, Mr. Lonsdale forcibly raped Ms. Clougherty.  In their hotel room, Mr. Lonsdale penetrated her with several fingers, and then abruptly started penetrating her with his erect penis.  She immediately pulled away from him.  He then grabbed her and penetrated her again.  She immediately pulled away a second time and ran

into the bathroom, where she locked the door and cried for several hours.  The following day, Ms. Clougherty flew to Spain to meet her mother and brother.  When her mother picked her up from the airport, Ms. Clougherty was exhausted and extremely disoriented.  Ms. Clougherty then slept for almost 23 hours.

52.     Over the next several months, Ms. Clougherty continued to see Mr. Lonsdale.  To control Ms. Clougherty, Mr. Lonsdale employed many forms of psychological manipulation and control on her, including but not limited to "positive intermittent reinforcement," "gaslighting," isolation, sleep deprivation, food deprivation, anger, embarrassment, and guilt.  Typically, Mr. Lonsdale would arrange to visit Ms. Clougherty in her dorm room or would pick her up and take her back to his house or to a hotel, sometimes for the entire weekend.  Mr. Lonsdale also took Ms. Clougherty on several trips.  During these times together, Mr. Lonsdale kept Ms. Clougherty isolated from others and repeatedly forced himself on her without her consent.

53.     On countless occasions during this period, Ms. Clougherty told Mr. Lonsdale that she did not want to have sex and asked him not to penetrate her.  Mr. Lonsdale dismissed her protests and continued to coerce her to engage in sex with him.  Throughout this period, Mr. Lonsdale repeatedly commented to Ms. Clougherty that women needed to be raped to learn to be loyal and that they really enjoyed being raped more than they let on.

*Mr. Lonsdale Hires Ms. Clougherty To Work as an Intern*

54.     In or around May 2012, Mr. Lonsdale suggested that Ms. Clougherty work for him over the summer at his venture capital fund, Formation 8.  From late June 2012 to early August 2012, a period of roughly six weeks, Ms. Clougherty worked as an intern for Mr. Lonsdale and Formation 8.

55.     The primary project to which Mr. Lonsdale assigned Ms. Clougherty was to construct a web-based survey on emerging technologies based on interviews with various leaders in finance, entrepreneurship, and academia.  During her internship at Formation 8, Mr. Lonsdale directly supervised Ms. Clougherty, set her rate of pay, gave her work assignments, reviewed her work, and told her with whom she should meet.  Mr. Lonsdale also coordinated a work-related

1

2

3     trip to New York with Ms. Clougherty during her internship so that he would have greater access

      to her.

4

5           56.      During the period of the internship, including on the work-related trip to New

      York, Mr. Lonsdale continued to use his increasing influence and power over Ms. Clougherty to

6     repeatedly, regularly, and continuously force himself upon her sexually without her consent.

7     ***Mr. Lonsdale Escalates His Sexual Deviance and Violence Against, and Control Over, Ms.***

8     ***Clougherty***

9           57.      Throughout the summer of 2012, Mr. Lonsdale increasingly began exhibiting

10    violent and deviant behaviors during his sexual assaults of Ms. Clougherty.  During intercourse,

11    he would regularly shake Ms. Clougherty violently and would not stop, despite her protests, until

12    she promised she would always "listen to her master."  In addition to shaking her violently during

13    sexual assaults, he also began strangling her, slapping her, scratching her, yanking her by the hair

14    so hard that he would lift her torso off the bed, and slamming her body against the walls and

15    bedboards.  He would growl and yell derogatory comments at her.  He frequently covered her

16    face with a pillow or pushed her face to the side so that she could not look at him.  Mr. Lonsdale

17    also often treated Ms. Clougherty's body like an object—for example, grabbing her head and

18    using it to push open a shower door.

19          58.      Mr. Lonsdale typically forced Ms. Clougherty to have sex several times a day—on

20    some occasions, as many as ten or more times a day.  When Ms. Clougherty was on her period,

21    Mr. Lonsdale's attacks were especially frequent.  He often would not let her buy tampons and

22    seemed to relish getting her blood everywhere—on her clothing, bed sheets, hotel furniture, car

23    and bus seats, and elsewhere.  He would not let her clean up the blood, and would get very angry

24    with her if she tried to clean it up.  On one occasion, in a hotel room, he even picked up her naked

25    body and made her sit on the hotel furniture so as to smear her blood all over it.

26          59.      Between approximately late summer 2012 and the end of their relationship, in

27    February 2013, Ms. Clougherty confronted Mr. Lonsdale about his sexual abuse on multiple

28    occasions.  She repeated her earlier statements that she did not wish to have a sexual relationship

with him and that she believed he was abusing and raping her, and she pleaded with him to stop his behavior. At some point, she even began calling him the "raping ape man" to his face. In many of these confrontations, Mr. Lonsdale reacted with such anger that Ms. Clougherty became too afraid to continue protesting. On several occasions he admitted that he was abusing her, but claimed that he had a sickness, that he could not control himself, and that he needed her help to change. After months of seemingly kind and loving behavior from Mr. Lonsdale interspersed with the abuse, Ms. Clougherty felt powerfully attached to Mr. Lonsdale and believed that if she was more supportive and treated him with kindness, he would stop hurting her. She wrote him numerous emails and love letters to let him know how much she cared about him in the hope that it would end the abuse.

60.     However, in or around February 2013, Mr. Lonsdale's assaults began to grow even more deviant and violent. At one point, he told Ms. Clougherty that he had only done "10%" of what he wanted to do to her, that he planned to take the entire month of April off to explore the depths of his sexual deviancy, and that if she didn't stop protesting, he would have to find a new victim.

***Ms. Clougherty's Family Intervenes***

61.     In or around February 2013, Ms. Clougherty had a severe emotional breakdown and called her mother. Fearing that Ms. Clougherty was suicidal, Ms. Clougherty's mother flew to Stanford to see her daughter.

62.     When Ms. Clougherty's mother saw Ms. Clougherty in person, she was horrified by her daughter's physical appearance and condition. Ms. Clougherty had lost significant weight, her face was bloated, and she had cysts on the back of her neck and torso where Mr. Lonsdale had recently dug his nails into her flesh during a sexual assault. Ms. Clougherty's mother and one of Ms. Clougherty's friends then helped Ms. Clougherty devise a plan to leave Mr. Lonsdale.

63.     On February 22, 2013, Ms. Clougherty arranged to meet Mr. Lonsdale at a public park. She confronted him again on the fact that he had raped her hundreds of times over the past

year. He became very angry and admitted that he had, but said that what he had done to her was only rape because her "Catholic guilt" told her she was not supposed to have sex.

### The Stanford Investigation and Findings

64.     In February 2013, Ms. Clougherty and her mother contacted Stanford officials to report Mr. Lonsdale's actions to them. Stanford retained an outside investigator to investigate Ms. Clougherty's allegations. At the end of the investigation, the outside investigator concluded that Mr. Lonsdale had engaged in conduct meeting the definitions of sexual harassment and sexual misconduct under Stanford's Title IX policy, and that it was "more likely than not that [Ms. Clougherty] expressed to [Mr. Lonsdale] that she did not want to engage in the sexual conduct in question, but that [Mr. Lonsdale] did not comply with [her] request." As a result of the investigation, Stanford banned Mr. Lonsdale from Stanford's campus for a minimum of ten years. Stanford's determination further states that Mr. Lonsdale may request that the restriction be lifted at the end of the ten year period, but that "he has been strongly encouraged to be prepared to justify lifting the restriction by demonstrating that he has sought counseling, training, or other education with respect to sexual misconduct and relationship violence."

### Ms. Clougherty's Trauma and Recovery

65.     As a result of the trauma Ms. Clougherty experienced at the hands of Mr. Lonsdale, she began experiencing debilitating symptoms of post-traumatic stress disorder ("PTSD"). After Ms. Clougherty left Mr. Lonsdale, she could not be alone and suffered from night terrors and flashbacks that caused her to weep and scream uncontrollably for hours. She felt depressed and had suicidal thoughts. She experienced twitching and convulsions. She could not leave the house or drive by herself or engage in normal everyday activities.

66.     In March 2013, Ms. Clougherty took a doctor-prescribed medical leave from Stanford in order to return home, where she could begin receiving full-time treatment. On March 27, 2013, Ms. Clougherty was evaluated by Elna Yadin, Ph.D., at Bryn Mawr College, one of the nation's foremost experts on PTSD. Dr. Yadin diagnosed Ms. Clougherty with PTSD. She then

underwent treatment for PTSD with Dr. Keith E. Saylor, Ph.D, Sc.M., a renowned clinical psychologist.

67.     Stanford accommodated Ms. Clougherty's need for medical leave, allowing her to finish school from home.  Despite the debilitating symptoms she was suffering during this period, she was able to graduate on time, in June 2013, with her Bachelor of Science.

68.     Although Ms. Clougherty has made great strides in her recovery, she continues to suffer to this day from a number of serious injuries including, but not limited to, debilitating flashbacks, emotional breakdowns, and periods of severe depression.

## COUNT I – SEXUAL BATTERY
## AGAINST JOSEPH LONSDALE

### Cal. Civ. Code § 1708.5

69.     Ms. Clougherty incorporates by reference all prior allegations in this Complaint as if fully restated herein.

70.     California Civil Code § 1708.5 provides that a person commits sexual battery on another when that person:

(1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results.

(2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results.

(3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

71.     Mr. Lonsdale engaged in sexual battery of Ms. Clougherty's person with the intent to cause harmful and offensive contact with intimate parts of her body.  As set forth above, Mr. Lonsdale intentionally acted to cause a harmful and offensive contact to Ms. Clougherty's intimate parts when Mr. Lonsdale, among other intentional acts, repeatedly touched the private parts of Ms. Clougherty without her consent and repeatedly engaged in non-consensual sexual intercourse, doing so continuously and incessantly between February 2012 and February 2013.

72.     Mr. Lonsdale engaged in sexual battery on Ms. Clougherty's person with the intent to cause harmful and offensive contact by use of his own intimate parts. As set forth above, Mr. Lonsdale engaged in intentional harmful and offensive contact of Ms. Clougherty's person by, among other intentional acts, rubbing his sexual organs against her and penetrating her with his sexual organ on hundreds of occasions without her consent, doing so continuously and incessantly between February 2012 and February 2013.

73.     Mr. Lonsdale engaged in sexual battery of Ms. Clougherty by placing her in fear of imminent harmful and offensive contact, with such harmful and offensive contact in fact resulting immediately thereafter.

74.     As a direct and proximate result of Mr. Lonsdale's tortious, wrongful, and unlawful acts and conduct towards her, Ms. Clougherty has suffered past and future special damages and past and future general damages in an amount to be proven at trial, but not less than $75,000. Ms. Clougherty has been damaged and injured physically, emotionally, and financially, including but not limited to suffering from pain, anxiety, depression, severe emotional distress, embarrassment, ridicule, and PTSD, as well as loss of health, future relationships, income, employment, and future career benefits and earning potential.

75.     In engaging in the conduct herein alleged, Mr. Lonsdale acted with malice, fraud, and oppression and in conscious disregard of Ms. Clougherty's health, rights, dignity and well-being, and intended to subject Ms. Clougherty to unjust hardship and mental anguish, thereby warranting an assessment of punitive damages in an amount sufficient to punish Mr. Lonsdale and deter others from engaging in similar conduct.

## COUNT II – SEXUAL ASSAULT
## AGAINST JOSEPH LONSDALE

76.     Ms. Clougherty incorporates by reference all prior allegations in this Complaint as if fully restated herein.

77.     As set forth above, Mr. Lonsdale engaged in sexual assault on Ms. Clougherty's person with the intent to cause harmful and offensive contact when he placed Ms. Clougherty in

imminent fear of such a harmful or physical contact without her consent, doing so continuously and incessantly between February 2012 and February 2013.

78. As a direct and proximate result of Mr. Lonsdale's tortious, wrongful, and unlawful acts and conduct towards her, Ms. Clougherty has suffered past and future special damages and past and future general damages in an amount to be proven at trial, but not less than $75,000. Ms. Clougherty has been damaged and injured physically, emotionally, and financially, including but not limited to suffering from pain, anxiety, depression, severe emotional distress, embarrassment, ridicule, and PTSD, as well as loss of health, future relationships, income, employment, and future career benefits and earning potential.

79. In engaging in the conduct herein alleged, Mr. Lonsdale acted with malice, fraud, and oppression and in conscious disregard of Ms. Clougherty's health, rights, dignity and well-being, and intended to subject Ms. Clougherty to unjust hardship and mental anguish, thereby warranting an assessment of punitive damages in an amount sufficient to punish Mr. Lonsdale and deter others from engaging in similar conduct.

### COUNT III – DOMESTIC VIOLENCE AGAINST JOSEPH LONSDALE

### Cal. Civ. Code § 1708.6

80. Ms. Clougherty incorporates by reference all prior allegations in this Complaint as if fully restated herein.

81. California Civil Code § 1708.6(a) states that "a person is liable for the tort of domestic violence if the plaintiff proves the following elements:

(1) The infliction of injury upon the plaintiff resulting from abuse, as defined in subdivision (a) of Section 13700 of the Penal Code.

(2) The abuse was committed by the defendant, a person having a relationship with the plaintiff as defined in subdivision (b) of Section 13700 of the Penal Code."

82. During the time in question, Ms. Clougherty and Mr. Lonsdale had a "dating relationship" for purposes of Cal. Civ. Code § 13700(b). This "dating relationship" began in February 2012 and ended in February of 2013.

83.     During this relationship, Mr. Lonsdale, as set forth above, repeatedly engaged in abuse as defined by Cal. Civ. Code § 13700(b), to wit, intentionally or recklessly causing or attempting to cause bodily injury to Ms. Clougherty and placing her in reasonable apprehension of imminent serious bodily injury to herself, doing so continuously and incessantly between February 2012 and February 2013.

84.     As a direct and proximate result of Mr. Lonsdale's tortious, wrongful, and unlawful acts and conduct towards her, Ms. Clougherty has suffered past and future special damages and past and future general damages in an amount to be proven at trial, but not less than $75,000.  Ms. Clougherty has been damaged and injured physically, emotionally, and financially, including but not limited to suffering from pain, anxiety, depression, severe emotional distress, embarrassment, ridicule, and PTSD, as well as loss of health, future relationships, income, employment, and future career benefits and earning potential.

85.     In engaging in the conduct herein alleged, Mr. Lonsdale acted with malice, fraud, and oppression and in conscious disregard of Ms. Clougherty's health, rights, dignity and well-being, and intended to subject Ms. Clougherty to unjust hardship and mental anguish, thereby warranting an assessment of punitive damages in an amount sufficient to punish Mr. Lonsdale and deter others from engaging in similar conduct.

86.     Ms. Clougherty is also entitled to an award of costs and attorneys' fees against Mr. Lonsdale pursuant to California Civil Code § 1708.6.

### COUNT IV – GENDER VIOLENCE
### AGAINST JOSEPH LONSDALE

### Cal. Civ. Code § 52.4

87.     Ms. Clougherty incorporates by reference all prior allegations in this Complaint as if fully restated herein.

88.     California Civil Code § 52.4 states that gender violence is "a form of sex discrimination" and includes:

(1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or

property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction. (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

89.     As set forth above, Mr. Lonsdale wrongfully, intentionally, and tortiously deprived Ms. Clougherty of her right to be free from any use of physical force, violence, or intimidation by threat of violence or use of physical force, committed against her person because of her sex and/or gender, doing so continuously and incessantly between February 2012 and February 2013.

90.     Upon information and belief, Ms. Clougherty's gender was a motivating factor in Mr. Lonsdale's unlawful treatment of her and Mr. Lonsdale's unlawful acts were committed at least in part based on Ms. Clougherty's gender.

91.     As a direct and proximate result of Mr. Lonsdale's tortious, wrongful, and unlawful acts and conduct towards her, Ms. Clougherty has suffered past and future special damages and past and future general damages in an amount to be proven at trial, but not less than $75,000. Ms. Clougherty has been damaged and injured physically, emotionally, and financially, including but not limited to suffering from pain, anxiety, depression, severe emotional distress, embarrassment, ridicule, and PTSD, as well as loss of health, future relationships, income, employment, and future career benefits and earning potential.

92.     In engaging in the conduct herein alleged, Mr. Lonsdale acted with malice, fraud, and oppression and in conscious disregard of Ms. Clougherty's health, rights, dignity and well-being, and intended to subject Ms. Clougherty to unjust hardship and mental anguish, thereby warranting an assessment of punitive damages in an amount sufficient to punish Mr. Lonsdale and deter others from engaging in similar conduct.

93.     Ms. Clougherty is also entitled to an award of costs and attorneys' fees against Mr. Lonsdale pursuant to California Civil Code § 52.4.

## COUNT V – SEXUAL HARASSMENT
## AGAINST JOSEPH LONSDALE

### Cal. Civ. Code § 51.9

94.     Ms. Clougherty incorporates by reference all prior allegations in this Complaint as if fully restated herein.

95.     California Civil Code § 51.9 states:

(a) A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves all of the following elements:

(1) There is a business, service or professional relationship between the plaintiff and defendant. Such a relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons: . . .

(E) Teacher

(F) A relationship that is substantially similar to any of the above.

(2) The defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe.

(3) There is an inability by the plaintiff to easily terminate the relationship.

(4) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the conduct described in paragraph (2).

96.     During the relevant time period, a school-sanctioned and arranged mentor/mentee relationship existed between Mr. Lonsdale and Ms. Clougherty, a relationship substantially similar to that of a teacher/student.  Among other duties, Mr. Lonsdale was responsible for instructional duties as a well as for evaluating Ms. Clougherty's work for purposes of receiving class credit.

97.     Additionally, during the summer of 2012, an employer/intern relationship existed between Mr. Lonsdale and Ms. Clougherty while she interned at Formation 8.  This relationship constituted a business, service, or professional relationship under California Civil Code § 51.9, in addition to the already existing mentor/mentee relationship.

98.     During the relevant time period, Mr. Lonsdale frequently and incessantly made unwanted sexual advances to Ms. Clougherty.  He made sexual advances, solicitations, sexual requests of her against her will and frequently sexually assaulted her despite her protests and attempts to resist.

99.     Mr. Lonsdale engaged in verbal and physical conduct of a sexual and hostile nature towards Ms. Clougherty based at least in part on her gender, all of which were unwelcome, pervasive, and severe.

100.     There was an inability on Ms. Clougherty's part to easily terminate the relationship: Mr. Lonsdale was at various points during their relationship her assigned class mentor and her employer.  She was also unable to easily terminate the relationship because of the severe trauma she experienced from Mr. Lonsdale's repeated sexual assaults and his use of psychological manipulation techniques.

101.     As a direct and proximate result of Mr. Lonsdale's tortious, wrongful, and unlawful acts and conduct towards her, Ms. Clougherty has suffered past and future special damages and past and future general damages in an amount to be proven at trial, but not less than $75,000.  Ms. Clougherty has been damaged and injured physically, emotionally, and financially, including but not limited to suffering from pain, anxiety, depression, severe emotional distress, embarrassment, ridicule, and PTSD, as well as loss of health, future relationships, income, employment, and future career benefits and earning potential.

102.     In engaging in the conduct herein alleged, Mr. Lonsdale acted with malice, fraud, and oppression and in conscious disregard of Ms. Clougherty's health, rights, dignity and well-being, and intended to subject Ms. Clougherty to unjust hardship and mental anguish, thereby

warranting an assessment of punitive damages in an amount sufficient to punish Mr. Lonsdale

and deter others from engaging in similar conduct.

103.    Ms. Clougherty is also entitled to an award of attorneys' fees against Mr. Lonsdale

pursuant to California Civil Code § 52.

### COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST JOSEPH LONSDALE

104.    Ms. Clougherty incorporates by reference all prior allegations in this Complaint as

if fully restated herein.

105.    Mr. Lonsdale's conduct and actions towards Ms. Clougherty, as set forth above,

were extreme and outrageous and beyond the bounds of decency tolerated in a civilized society.

106.    Mr. Lonsdale's conduct and actions towards Ms. Clougherty were intended to

cause her emotional distress, and Mr. Lonsdale acted with reckless disregard to the probability

that Ms. Clougherty would suffer emotional distress.

107.    Ms. Clougherty has suffered, and continues to suffer, extreme emotional distress

as a direct and proximate result of Mr. Lonsdale's actions towards her, including but not limited

to the repeated, incessant, and continual acts of sexual assault abuse as previously set forth.

108.    Mr. Lonsdale's intentional actions were a substantial factor in causing Ms.

Clougherty's severe emotional distress.

109.    As a direct and proximate result of Mr. Lonsdale's tortious, wrongful, and

unlawful acts and conduct towards her, Ms. Clougherty has suffered past and future special

damages and past and future general damages in an amount to be proven at trial, but not less than

$75,000.  Ms. Clougherty has been damaged and injured physically, emotionally, and financially,

including but not limited to suffering from pain, anxiety, depression, severe emotional distress,

embarrassment, ridicule, PTSD, as well as loss of health, future relationships, income,

employment, and future career benefits and earning potential.

110.    In engaging in the conduct herein alleged, Mr. Lonsdale acted with malice, fraud,

and oppression and in conscious disregard of Ms. Clougherty's health, rights, dignity and well-

being, and intended to subject Ms. Clougherty to unjust hardship and mental anguish, thereby

warranting an assessment of punitive damages in an amount sufficient to punish Mr. Lonsdale
and deter others from engaging in similar conduct.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AGAINST JOSEPH LONSDALE

111.    Ms. Clougherty incorporates by reference all prior allegations in this Complaint as
if fully restated herein.

112.    Mr. Lonsdale owed a duty of reasonable care to Ms. Clougherty in his actions and
conduct towards her.  It was foreseeable and probable that Ms. Clougherty would suffer severe
emotional distress as a result of Mr. Lonsdale's conduct described above.

113.    Mr. Lonsdale was negligent by breaching the duty of care he owed Ms. Clougherty
when he repeatedly abused, manipulated, dominated, threatened, and harassed Ms. Clougherty,
doing so continuously and incessantly from February 2012 to February 2013.

114.    Ms. Clougherty has suffered severe emotional distress as a direct and proximate
result of Mr. Lonsdale's negligent actions towards her.

115.    Mr. Lonsdale's actions were a substantial factor in causing Ms. Clougherty's
severe emotional distress.

116.    As a direct and proximate result of Mr. Lonsdale's tortious, wrongful, and
unlawful acts and conduct towards her, Ms. Clougherty has suffered past and future special
damages and past and future general damages in an amount to be proven at trial, but not less than
$75,000.  Ms. Clougherty has been damaged and injured physically, emotionally, and financially,
including but not limited to suffering from pain, anxiety, depression, severe emotional distress,
embarrassment, ridicule, and PTSD, as well as loss of health, future relationships, income,
employment, and future career benefits and earning potential.

117.    In engaging in the conduct herein alleged, Mr. Lonsdale acted with malice, fraud,
and oppression and in conscious disregard of Ms. Clougherty's health, rights, dignity and well-
being, and intended to subject Ms. Clougherty to unjust hardship and mental anguish, thereby
warranting an assessment of punitive damages in an amount sufficient to punish Mr. Lonsdale
and deter others from engaging in similar conduct.

## COUNT VIII – NEGLIGENT RETENTION AND SUPERVISION
## AGAINST FORMATION 8

118.    Ms. Clougherty incorporates by reference all prior allegations in this Complaint as if fully restated herein.

119.    Formation 8 has a duty to retain agents who are fit and competent, to supervise its agents, and to implement measures to protect third persons from the predictable and foreseeable risks posed by its agents.

120.    Formation 8 knew, or should have known through the exercise of reasonable diligence, that Mr. Lonsdale, as an agent of Formation 8, was incompetent and unfit to perform the duties for which he was responsible, and that undue risks to persons such as Ms. Clougherty could or would result by way of Mr. Lonsdale's abuse of the privileges and authority he was granted.

121.    Formation 8 knew, or should have known through the exercise of reasonable diligence, that Mr. Lonsdale had initiated an inappropriate sexual relationship with his mentee—Ms. Clougherty—who he then hired as an intern, that he continued to maintain said inappropriate sexual relationship with Ms. Clougherty during the period of her internship, and therefore should not have authorized Mr. Lonsdale's supervision of Ms. Clougherty as an intern of Formation 8.

122.    Formation 8 was negligent by breaching the duty of care owed to third persons such as Ms. Clougherty by retaining and failing to supervise Mr. Lonsdale—its agent—in his wrongful and tortious interactions with Ms. Clougherty.

123.    Mr. Lonsdale's actions towards Ms. Clougherty were foreseeable and easily discoverable and were committed during and facilitated by an internship that furthered the interests of Formation 8.

124.    Formation 8 breached its duty of care by failing to implement measures to protect third persons from foreseeable risks, unreasonable risks of harm, and the tortious, wrongful, and harmful actions of its agent that were reasonably foreseeable and easily discoverable.

125.     Formation 8 failed to terminate Mr. Lonsdale or take any disciplinary action against him.  Instead, it retained him as its agent and enabled him to continue abusing and assaulting Ms. Clougherty, one of its interns.

126.     Formation 8's failure to train, supervise, and terminate Mr. Lonsdale was the direct and proximate cause of many of Ms. Clougherty's injuries.  Ms. Clougherty has suffered past and future special damages and past and future general damages in an amount to be proven at trial, but not less than $75,000.  Ms. Clougherty has been damaged and injured physically, emotionally, and financially, including but not limited to suffering from pain, anxiety, depression, severe emotional distress, embarrassment, ridicule, and PTSD, as well as loss of health, future relationships, income, employment, and future career benefits and earning potential.

## PRAYER FOR RELIEF

WHEREFORE, having stated her Complaint, Plaintiff respectfully prays for judgment against Defendants as follows:

A.     For general and special damages in an amount to be determined at trial, but not less than $75,000;

B.     For pre- and post-judgment interest according to proof;

C.     For punitive and exemplary damages;

D.     For costs of suit including reasonable attorneys' fees, costs, and expenses; and

E.     For all other relief this Court may deem just, equitable, and proper.

Dated:  January 27, 2015                    Respectfully submitted,

                                            THE LIU LAW FIRM, P.C.

                                            By:  _____*/s/ Jennifer L. Liu*_____
                                                         Jennifer L. Liu

                                            Jennifer L. Liu, Cal. Bar No. 279370
                                            THE LIU LAW FIRM, P.C.
                                            324 Day Street
                                            San Francisco, CA 94131
                                            Telephone: (415) 896-4260
                                            Fax: (415) 231-0011
                                            E-Mail: jliu@liulawpc.com

COMPLAINT

1

2          John C. Clune, Colorado Bar No. 27684
           (*pro hac vice* motion forthcoming)
3          HUTCHINSON BLACK AND COOK, LLC
           921 Walnut Street, Suite 200
4          Boulder, CO 80302
           Telephone: (303) 442-6514
5          Fax: (303) 442-6593
           E-Mail: clune@hbcboulder.com
6
           L. Lin Wood, Georgia Bar No. 774588
7          (*pro hac vice* motion forthcoming)
           David Ehrlich, Georgia Bar No. 353601
8          (*pro hac vice* motion forthcoming)
           L. LIN WOOD, P.C.
9          1180 West Peachtree Street, Suite 2400
           Atlanta, GA 30309
10         Telephone: (404) 891-1402
           Fax: (404) 506-9111
11         E-Mail: lwood@linwoodlaw.com

12         *Attorneys for Plaintiff Elise Clougherty*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1

2

### **DEMAND FOR JURY TRIAL**

3
Plaintiff hereby demands a jury trial on all causes of action and claims with respect to

4
which she has a right to a jury trial.

5
   Dated:  January 27, 2015             Respectfully submitted,

6

7
THE LIU LAW FIRM, P.C.

8
By:  _____*/s/ Jennifer L. Liu*_____
                 Jennifer L. Liu

9
Jennifer L. Liu, Cal. Bar No. 279370)
THE LIU LAW FIRM, P.C.

10
324 Day Street
San Francisco, CA 94131

11
Telephone: (415) 896-4260
Fax: (415) 231-0011

12
E-Mail: jliu@liulawpc.com

13
John C. Clune, Colorado Bar No. 27684
(*pro hac vice* motion forthcoming)

14
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200

15
Boulder, CO 80302
Telephone: (303) 442-6514

16
Fax: (303) 442-6593
E-Mail: clune@hbcboulder.com

17
L. Lin Wood, Georgia Bar No. 774588

18
(*pro hac vice* motion forthcoming)
David Ehrlich, Georgia Bar No. 353601

19
(*pro hac vice* motion forthcoming)
L. LIN WOOD, P.C.

20
1180 West Peachtree Street, Suite 2400
Atlanta, GA 30309

21
Telephone: (404) 891-1402
Fax: (404) 506-9111

22
E-Mail: lwood@linwoodlaw.com

23
*Attorneys for Plaintiff Elise Clougherty*

24

25

26

27

28

COMPLAINT