Kristen Dumont (SBN 191554)
kristen@kristendumont.com
**LAW OFFICES OF KRISTEN DUMONT**
P.O. Box 138
1325 Howard Avenue
Burlingame, California 94010
Tel.: 650.799.4397

Orin Snyder (admitted *pro hac vice*)
osnyder@gibsondunn.com
**GIBSON, DUNN AND CRUTCHER LLP**
200 Park Avenue
New York, New York 10166
Tel.: 212.351.2400
Fax: 212.351.6335

[additional counsel listed on following page]

*Attorneys for Defendant and Counterclaimant*
*Joseph Lonsdale*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH LONSDALE,<br><br>      Counterclaimant and Defendant,<br><br>   V.<br><br>ELISE CLOUGHERTY,<br><br>      Counter-Defendant and Plaintiff | Case No. 4:15-cv-00382-WHA<br><br>**JOSEPH LONSDALE'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |
| ELISE CLOUGHERTY,<br><br>      Plaintiff and Counter-Defendant,<br><br>   v.<br><br>JOSEPH LONSDALE; FORMATION8 GP, LLC; and FORMATION8 PARTNERS, LLC,<br><br>      Defendants and Counterclaimant. | Date: April 30, 2015<br>Time: 8:00 a.m.<br>Dept.: Courtroom No. 8, 19th Fl.<br>Judge: Hon. William H. Alsup<br><br>Comp. Filed: January 27, 2015<br>Countercl. Filed: January 30, 2015<br>Amended Countercl. Filed: March 9, 2015<br>Trial Date: Not set. |

Emily C. Aldridge (SBN 299236)
ealdridge@gibsondunn.com
Joseph Tartakovsky (SBN 282223)
jtartakovsky@gibsondunn.com
**GIBSON, DUNN AND CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel.: 415.393.8234
Fax: 415.374.8402

Sarah Vacchiano (admitted *pro hac vice*)
svacchiano@gibsondunn.com
**GIBSON, DUNN AND CRUTCHER LLP**
200 Park Avenue
New York, New York 10166
Tel.: 212.351.2454
Fax: 212.716.0854

Joseph R. Farris (SBN 263405)
jfarris@goodwinprocter.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.600
Fax: 415.677.9041

Brenda Sharton (admitted *pro hac vice*)
bsharton@goodwinprocter.com
**GOODWIN PROCTER LLP**
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231

*Attorneys for Defendant and Counterclaimant*
*Joseph Lonsdale*

# **Table of Contents**

I.   Preliminary Statement ................................................................................................ 1

II.  Statement of Facts and Proceedings ........................................................................ 3

    A.   The Relationship Between Mr. Lonsdale And Ms. Clougherty .............................. 3

    B.   Mr. Lonsdale Discovers Ms. Clougherty's Campaign Of Lies Against Him ......... 5

III. Governing Legal Standard ........................................................................................ 7

IV.  Argument................................................................................................................... 8

    A.   Counts III, IV, V, VIII, IX, and X Were Pleaded With Sufficient Specificity ....... 8

    B.   Counts XI, XII, XIII, And XIV Are Based On Sufficiently Pleaded
        Defamation Claims.......................................................................................... 12

    C.   The Discovery Rule Applies To Counts IV, V, IX, and X, Which Are
        Timely ........................................................................................................... 13

    D.   Ms. Clougherty Is Not Entitled To A More Definite Statement Under
        Federal Rule Of Civil Procedure 12(e) .......................................................... 15

V.   Conclusion............................................................................................................... 15

# **Table of Authorities**

**Cases**

*Arvey Corp. v. Peterson*,
178 F. Supp. 132 (E.D. Pa. 1959) ........................................................................................ 12

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................................ 7, 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) .................................................................................. 7

*Bernson v. Browning–Ferris Indus.*,
7 Cal. 4th 926 (1994).......................................................................................................... 14

*Burdette v. Carrier Corp.*,
158 Cal. App. 4th 1668 (2008)....................................................................................... 13, 14

*Cellars v. Pacific Coast Packaging, Inc.*,
189 F.R.D. 575 (N.D. Cal. 1999) ........................................................................................ 8

*Crawford v. W. Jersey Health Sys. (Voorhees Div.)*,
847 F. Supp. 1232 (D.N.J. 1994) ........................................................................................ 11

*Don King Prods./Kingvision v. Lovato*,
911 F. Supp. 419 (N.D. Cal. 1995) ...................................................................................... 7

*Durso v. Summer Brook Pres. Homeowners Ass'n*,
641 F. Supp. 2d 1256 (M.D. Fla. 2008) ............................................................................. 11

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
04-cv-2562-JM, 2006 WL 4569360 (S.D. Cal. Feb. 6, 2006) ........................................... 10

*Hebrew Academy of San Francisco v. Goldman*,
42 Cal. 4th 883 (2007)................................................................................................... 13, 14

*Heckman v. Zurich Holding Co. of Am.*,
06-cv-2435, 2007 WL 677607 (D. Kan. Feb. 28, 2007) .................................................... 11

*Hoffman v. Hill & Knowlton, Inc.*,
777 F. Supp. 1003 (D.D.C. 1991) ....................................................................................... 12

*Howl v. Bank of America, N.A.*,
No. C 11-0887 CW, 2011 WL 3610745 (N.D. Cal. Aug. 17, 2011) ................................. 14

*Kennedy Funding, Inc. v. Chapman*,
09-cv-01957-RS, 2010 WL 4509805 (N.D. Cal. Nov. 1, 2010) ......................................... 9

*McNair v. Worldwide Church of God*,
197 Cal. App. 3d 363, (1987)............................................................................................... 13

*NL Indus., Inc. v. Kaplan*,
792 F.2d 896 (9th Cir. 1986)................................................................................................ 7

*Pac. Rollforming, LLC v. Trakloc Int'l, LLC*,
   07-cv-1897-L(JMA), 2008 WL 4183916 (S.D. Cal. Sept. 8, 2008) .................................... 2, 8, 9

*PAI Corp. v. Integrated Sci. Solutions, Inc.*,
   No. C-06-5349 JSW (JCS), 2007 WL 1229329 (N.D. Cal. Apr. 25, 2007)...... 8, 9, 10, 11, 12, 15

*Pentz v. Downey*,
   110 F. Supp. 642 (E.D. Pa. 1953) ...................................................................................... 10, 12

*Shively v. Bozanich*,
   31 Cal. 4th 1230 (2003)............................................................................................... 3, 13, 14

*White v. Hansen*,
   No. C 05-784 SBA, 2005 WL 1806367 (N.D. Cal. July 28, 2005) ............................................ 8

*Wiggins v. Dist. Cablevision, Inc.*,
   853 F. Supp. 484 (D.D.C. 1994) ............................................................................................. 11

*Wiggins v. Hitchens*,
   853 F. Supp. 505 (D.D.C. 1994) ............................................................................................. 11

*Wiggins v. Philip Morris, Inc.*,
   853 F. Supp. 458 (D.D.C. 1994) ............................................................................................. 11

*Wiggins v. Philip Morris, Inc.*,
   853 F. Supp. 470 (D.D.C. 1994) ............................................................................................. 11

## Statutes

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 7, 15

Fed. R. Civ. P. 12(e)................................................................................................................. 8, 15

Fed. R. Civ. P. 8 ...................................................................................................................... passim

Fed. R. Civ. P. 9(b)......................................................................................................... 2, 9, 10, 12

## Treatises

Charles A. Wright & Arthur R. Miller,
   *Federal Practice and Procedure: Civil* (3d ed. 2004) ........................................................ 11, 12

Defendant and Counterclaimant Joseph Lonsdale ("Mr. Lonsdale") respectfully submits this opposition to the motion of Plaintiff and Counter-Defendant Elise Clougherty ("Ms. Clougherty") to partially dismiss Mr. Lonsdale's causes of action (or, alternatively, for an order for a more definite statement).  Under the applicable liberal pleading standard of Rule 8(a)(2), Mr. Lonsdale has sufficiently pleaded his counterclaims to provide notice of Ms. Clougherty's improper and harmful conduct.  Ms. Clougherty seeks to improperly impose a heightened pleading standard and, as such, her partial motion to dismiss should be denied in its entirety.

## I.    Preliminary Statement

Mr. Lonsdale's counterclaims arise from false and malicious accusations made against Mr. Lonsdale by his former girlfriend, Ms. Clougherty.  The two were in a serious relationship for approximately one year, from February 2012 to February 2013, during which they traveled together on vacations, and spent extensive time together and with their respective families.  Hundreds of email communications provide ample support for the consensual, loving, adult relationship that existed between them,[1] including evidence that Ms. Clougherty's mother, Anne Clougherty, implored Mr. Lonsdale to continue to date Ms. Clougherty after the relationship ended.  It was after Mr. Lonsdale clearly and irrevocably broke off the relationship that Ms. Clougherty began to make up stories about how Mr. Lonsdale treated her during the yearlong relationship.  Although Ms. Clougherty first accused Mr. Lonsdale of generalized "emotional abuse," over time her accusations escalated—becoming more grandiose and vicious, and eventually resulting in a fiction featuring grotesque and reprehensible acts of sexual violence.

Mr. Lonsdale's counterclaims are aimed at correcting the falsehoods spread by Ms. Clougherty.  She has made these false statements about Mr. Lonsdale—a highly respected executive and venture capital investor—to his colleagues in private communications behind Mr. Lonsdale's back that he learned about only gradually.  Ms. Clougherty then made false statements about Mr. Lonsdale to The New York Times, knowing that these lies would be further

---

[1]    A sampling of the documentary evidence of the consensual and loving nature of the relationship between Mr. Lonsdale and Ms. Clougherty is attached to the Counterclaim.  *See* Dkt. 39-1.

1

disseminated to countless individuals. Her actions demonstrate a malicious campaign to inflict maximum reputational, emotional, and financial harm on Mr. Lonsdale, or, as she put it in a private text to her then-best friend, a "total[] Joe take down scheme!"

Ms. Clougherty now moves to partially dismiss the counterclaims. She does not move to dismiss the counts based on Ms. Clougherty's statements to The New York Times, or the counts based on the subsequent republication of those statements in The New York Times Magazine.[2] Ms. Clougherty therefore concedes that these allegations in the amended counterclaims state a claim for defamation. Instead, Ms. Clougherty limits her challenge to claims based on statements made to a Stanford law professor, an ex-girlfriend of Mr. Lonsdale, and that ex-girlfriend's boyfriend—Counts III, IV, V, VIII, IX, X, XI, XII, XIII, and XIV—contending that (i) these counts fail to allege with specificity when and where the publication of defamatory statements occurred, even though these statements were made in private conversations between Ms. Clougherty and third parties, (ii) Mr. Lonsdale's claims of emotional distress and invasion of privacy fail because they are predicated in part on the dismissible defamation and defamation *per se* claims, and (iii) Mr. Lonsdale is not entitled to invoke the discovery rule to toll the statute of limitations on his claims.

The motion is without merit and should be summarily denied. First, Mr. Lonsdale has pleaded Counts III, IV, V, VIII, IX, and X with sufficient particularity. A defamation plaintiff need not "allege the when, where, who and how of the alleged defamatory statements" because defamation claims need not be pleaded "to the level of specificity required by Rule 9(b)," but only the "liberal pleading requirement of Rule 8(a)(2)." *Pac. Rollforming, LLC v. Trakloc Int'l, LLC*, No. 07-cv-1897-L(JMA), 2008 WL 4183916, at *4 (S.D. Cal. Sept. 8, 2008). Mr. Lonsdale has alleged everything he could be expected to know about lies told behind his back. Ms. Clougherty's motion elides the fact that Mr. Lonsdale learned about these statements secondhand and well after they were made. Discovery from Ms. Clougherty and third parties is essential to

[2]    As the Court will see, this article generated significant commentary among its readers. Notably, of the 1,163 comments posted, less than one percent of them found Ms. Clougherty's allegations of sexual abuse credible. Nevertheless, the allegations constitute defamation *per se*.

OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS        Case No. 3:15-cv-00382-WHA

flush out the full facts surrounding these defamatory statements. Further, Mr. Lonsdale's allegation in the counterclaim that he only learned of these false statements within the limitations period is more than sufficient to satisfy the discovery rule as articulated by the California Supreme Court in *Shively v. Bozanich*, 31 Cal. 4th 1230 (2003).

Second, the emotional distress and invasion of privacy counts likewise state viable claims. Even without relying on the defamation counts, the emotional distress and privacy counts should not be dismissed because they are also based on Ms. Clougherty's statements to the New York Times reporter Emily Bazelon and the subsequent republication of those statements in The New York Times Magazine, allegations that Ms. Clougherty does not challenge.

The Court should deny Ms. Clougherty's partial motion to dismiss in its entirety.

## II.   Statement of Facts and Proceedings

### A.   The Relationship Between Mr. Lonsdale And Ms. Clougherty

In 2010, the parties first came into contact when Ms. Clougherty reached out to Mr. Lonsdale in connection with a book on start-up entrepreneurs she was helping to write. Amended Counterclaims (Dkt. 39) at ¶ 24. After this initial email, the parties continued to correspond infrequently until they met in person in January 2011, when a mutual friend introduced Mr. Lonsdale to Ms. Clougherty in New York. *Id.* After this meeting, the parties stayed in contact, occasionally meeting in person, and eventually going on a "datish" date at Ms. Clougherty's suggestion. *Id.* at ¶ 27. After learning that Mr. Lonsdale previously volunteered as an alumni resource in an entrepreneurship class at Stanford, Ms. Clougherty registered for that class for Stanford's Winter Quarter of 2012, almost a year after they first met. *Id.* at ¶ 28. They began to date seriously in late February 2012. *See id.* at ¶¶ 30-34.

Their relationship was like many other relationships between two consenting adults. They took trips together, got to know each other's families, and spent time with each other's friends and other couples. *Id.* at ¶¶ 24-44. Ms. Clougherty's mother, Anne Clougherty, was frequently around the couple and had expressed her approval of Mr. Lonsdale and his positive impact on her daughter. *Id.* at ¶ 44. Mr. Lonsdale and Ms. Clougherty also exchanged hundreds of emails and texts which reflect a mutual love and affection for each other throughout the course of their

relationship. *See, e.g.*, *id.* at ¶¶ 14, 26-28, 31-35, 38, 41-43, 51-55. These communications include numerous statements about how happy Ms. Clougherty was with Mr. Lonsdale, how well he treated her, and their happy sex life. For example:

- "I'm really happy to be with you, I have like, butterflies in my stomach." *Id.* at ¶ 41.

- "You have such good morals that I love to learn from and you work so hard it's insane but it never takes away your humility or pleasant nature. Super proud and loving you, Ellie." *Id.*

- "I really love how much you care about me and like I told [a friend] in Rome, the love I feel for you is deep . . . ." *Id.* at ¶ 42.

- "I really really love you and I like who we are together - sometimes I think you're so so cute I could just hug and kiss you to death and other times I'm enamored by your strength in character, leadership, and morals." *Id.*

- In response to an email from Mr. Lonsdale stating that he hoped Ms. Clougherty was "having a good day, miss you already. your bed is way too small but it was still nice to be next to you," she responded: "I miss you already too! Haha, I slept in an extra two hours since I'm on vacation. haha, We should push the beds together, haha it's definitely too small." *Id.* at ¶ 43.

The parties, however, faced unique challenges based on the fact that Mr. Lonsdale is a successful entrepreneur who is constantly traveling, and as such, was unable to spend as much time with Ms. Clougherty as she would have liked. *See id.* at ¶¶ 26, 56-58, 67. The parties also faced challenges based on Ms. Clougherty's erratic behavior and lingering issues that surfaced a few months into their relationship about her pre-relationship hospitalization for mental health concerns. For example, in a trip to Asia in August 2012, Ms. Clougherty exhibited extreme behavior that was inconsistent with her conduct up until that time. *Id.* at ¶¶ 7, 45-47. Following the trip to Asia, Ms. Clougherty wrote a ten-page letter to Mr. Lonsdale to apologize and explain her actions, saying that she had an autoimmune disorder that caused her to suffer from "cognitive distortions" that affected her perception of reality. *See id.* at ¶¶ 8-9. She further explained that these "cognitive distortions" at times convinced her that things were happening that did not ever

4

happen.  *See id.* ("I was physically incapable of speaking the truth, because cognitively, I was blind to it").  Throughout this period, Mr. Lonsdale continued to be supportive of Ms. Clougherty as is reflected in the parties' email communications.

These stresses eventually took a toll on their relationship and Mr. Lonsdale broke up with Ms. Clougherty for the first time in December 2012.  *Id.* at ¶ 10, 63.   In response, Anne Clougherty wrote to Mr. Lonsdale, imploring him to give his relationship with her daughter another chance.  *Id.* at ¶ 64.  In this letter, Anne Clougherty praises Mr. Lonsdale, writing about the "wonderful qualities" Ms. Clougherty told her about Mr. Lonsdale and how Ms. Clougherty "loved every minute" of their relationship.  *Id.*  Shortly thereafter, Mr. Lonsdale briefly rekindled the relationship with Ms. Clougherty.  During this time, Ms. Clougherty continued to send loving emails to Mr. Lonsdale, stating, for example, "[It] makes me happy that we're in a good place" and "It makes me so happy to think there's someone like you in the world I can love and think about."  *Id.* at ¶ 66.  But Ms. Clougherty's erratic behavior continued and Mr. Lonsdale chose to finally end the relationship for good in February 2013.  *See id.* at ¶¶ 68-69.

**B.       Mr. Lonsdale Discovers Ms. Clougherty's Campaign Of Lies Against Him**

After February 2013, the parties did not have any additional contact other than occasional emails that Mr. Lonsdale sent to Ms. Clougherty inquiring about how she was doing.  *Id.* at ¶ 69.  Unbeknownst to Mr. Lonsdale or his family and friends, following the termination of their relationship, Ms. Clougherty's behavior took yet another dramatic turn: in a shocking series of events, Ms. Clougherty commenced a vicious whisper campaign of stunningly false and constantly escalating accusations.  *Id.* at ¶¶ 70-92.  Ms. Clougherty first asserted that Mr. Lonsdale had "emotionally" abused her and eventually claimed that he had sexually assaulted her over the course of their relationship.  *Id.* at ¶¶ 11, 13-15, 70-77.

Mr. Lonsdale learned for the first time after February 2014 that Ms. Clougherty had secretly and falsely told Mr. Lonsdale's ex-girlfriend and her current boyfriend that Mr. Lonsdale had sexually assaulted Ms. Clougherty during their relationship.  *Id.* at ¶¶ 71-72.  In December 2014 or January 2015, Mr. Lonsdale further learned for the first time that Ms. Clougherty had private communications with a Stanford professor in mid-2014 in which she falsely alleged sexual

OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS        Case No. 3:15-cv-00382-WHA

misconduct by Mr. Lonsdale with the hope that this professor would help her generate damaging press reports about Mr. Lonsdale.  *Id.* at ¶ 73.

Only with the filing of the Complaint in this action in January 2015 did Mr. Lonsdale learn the full extent of the appalling web of lies that Ms. Clougherty has spun.  *See id.* at ¶¶ 13-14, 74-77.  In stark contrast to the extensive email communications between the parties evidencing a consensual, loving relationship, Mr. Lonsdale learned that Ms. Clougherty now:

- Contends that in February 2012 Mr. Lonsdale sexually assaulted her, despite emailing Mr. Lonsdale "I love getting to know you!  More deets about rome soon :)" the very night this assault allegedly happened;

- Alleges that she was repeatedly raped and that over the yearlong relationship with Mr. Lonsdale, she never consented to sexual acts with him; and

- Claims that Mr. Lonsdale used psychological manipulations to abuse and control her so that she would remain in a relationship with him.

Mr. Lonsdale has also learned that Ms. Clougherty's false statements were part of what Ms. Clougherty called a "Joe take down scheme" in a text she sent to a former close friend, who has since come forward to refute Ms. Clougherty's allegations of sexual assault.  *See id.* at ¶ 2.  Ms. Clougherty told that friend in a text that as a result of Mr. Lonsdale's manipulations, she considers herself to have been a "sex slave" for the entire year she dated Mr. Lonsdale—despite her pleas to him to spend more time with her.  *See, e.g.*, *id.* Exh. 17 (awarding Mr. Lonsdale "points" for communicating with her more and accepting her invitations to dates and social gatherings).

Based on the information he learned after February 2014 about Ms. Clougherty's false and defamatory statements, Mr. Lonsdale filed counterclaims against her on January 30, 2015.  Dkt. 17.

Mr. Lonsdale did not learn about the most significant lies Ms. Clougherty had told until The New York Times Magazine published an article relating those statements in February 2015.  *Id.* at ¶¶ 12, 74-77.  That article reflected that Ms. Clougherty had made numerous statements to Ms. Bazelon, the New York Times journalist, including graphic details of alleged rapes.  Ms.

6

Clougherty also provided Ms. Bazelon with tapes from Ms. Clougherty's therapy sessions, in which she discussed the alleged assaults and abuse. *Id.* at ¶¶ 74-75. In the recordings, Ms. Clougherty told her therapist that Mr. Lonsdale had "psychologically kidnapped" her, "brainwashed" her, and deprived her of personal agency and person choice for a year. *Id.* at ¶ 75. The New York Times Magazine article further revealed that Ms. Clougherty only developed memories of abuse after her mother provided her with a book on abusive men, and that her therapist reinforced these new memories by repeating Ms. Clougherty's statements back to her: "You didn't have personal agency, you didn't have personal choice, all of those things had been robbed from you."[3] Ms. Clougherty shared these statements with Ms. Bazelon with the knowledge that she, a journalist, would publish these statements, further causing Mr. Lonsdale harm. *Id.* at ¶¶ 76-77.

On March 9, 2015, Mr. Lonsdale amended his counterclaims to add additional information he learned after he filed his original counterclaims. These amendments included claims based on Ms. Clougherty's false and defamatory statements to The New York Times.

## III.    Governing Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion, a complaint need simply state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007) (analyzing the liberal pleading standard of Rule 8(a)(2)); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Don King Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

---

[3]    Ms. Clougherty's therapist admitted to Ms. Bazelon, "My role is not to question her veracity but to help her get well."

OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS    Case No. 3:15-cv-00382-WHA

At the motion to dismiss stage, California federal courts have held that little detail is needed to sustain a defamation claim. *See, e.g.*, *Pac. Rollforming*, 2008 WL 4183916, at *4 (holding that a claim for defamation need not allege "the when, where, who and how" of the alleged defamatory statements"). Moreover, courts have generally dismissed defamation claims for insufficient pleading only where the plaintiff put forth far less detailed allegations than Mr. Lonsdale has here. *See, e.g.*, *White v. Hansen*, No. C 05-784 SBA, 2005 WL 1806367, at *9 (N.D. Cal. July 28, 2005) (dismissing slander claims with leave to amend where Plaintiff omitted the elements of the claim, failing to allege (i) the content of allegedly slanderous statements, (ii) to whom the statements were made, (iii) that the statements were false, and (iv) that Plaintiff was harmed by the statements).

Under Rule 12(e), a party may "move for a more definite statement of a pleading" only where the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). "Motions for a more definite statement are viewed with disfavor, and are rarely granted." *Cellars*, 189 F.R.D. at 578. It is well established that libel and slander claims are governed by Rule 8(a)(2), which requires only a "short and plain statement of the claim" that provides defendant "sufficient notice of the communications complained of." *See, e.g.*, *PAI Corp. v. Integrated Sci. Solutions, Inc.*, No. C-06-5349 JSW (JCS), 2007 WL 1229329, at *7 (N.D. Cal. Apr. 25, 2007) (citations omitted). A more definite statement is only necessary where the requirements of Rule 8 are not met. *See Cellars*, 189 F.R.D. at 578; *PAI Corp.*, 2007 WL 1229329, at *7 (requiring a more definite statement because pleader failed to plead any facts about who made the statements, when they were made, and to whom).

## IV.   Argument

### A.   Counts III, IV, V, VIII, IX, and X Were Pleaded With Sufficient Specificity

Ms. Clougherty claims that the causes of action for defamation *per se* and defamation based on Ms. Clougherty's statements to a Stanford professor, to Mr. Lonsdale's ex-girlfriend, and to Mr. Lonsdale's ex-girlfriend's boyfriend (Counts III, IV, V, VIII, IX, and X) should be dismissed in their entirety "for failure to allege with any specificity when and where the

OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS      Case No. 3:15-cv-00382-WHA

publications occurred." Dkt. 48 at 3. She contends that a defamation claim must state with "specificity" both "when and where the publications occurred" to survive a motion to dismiss. Dkt. 48 at 3, 4-6. This argument is without merit.

Mr. Lonsdale's defamation claims are not fraud claims subject to the heightened pleading standards of Rule 9. They must only satisfy the "short and plain statement" requirement of Rule 8. *See, e.g.*, *Kennedy Funding, Inc. v. Chapman*, 09-cv-01957-RS, 2010 WL 4509805, at *5 (N.D. Cal. Nov. 1, 2010) ("defamation is not subject to the heightened pleading standard of Rule 9(b)"). Mr. Lonsdale therefore need not "allege the when, where, who and how of the alleged defamatory statements" because that would impose a "level of specificity required by Rule 9(b)." *Pac. Rollforming*, 2008 WL 4183916, at *4. He needs only satisfy the "liberal pleading requirements of Rule 8(a)(2)," *id.*, and the *Iqbal* requirement that his claims for relief are "plausible on [their] face," *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

Mr. Lonsdale's counterclaims contain more than sufficient detail to satisfy those standards. As to the statements to the Stanford professor, Mr. Lonsdale alleged when the statements were made (mid-2014), the substance of the statements (that Mr. Lonsdale had sexually assaulted Ms. Clougherty), the purpose of the statements (to ask the professor to help spread the statements), and when Mr. Lonsdale learned of the statements (December 2014 or January 2015). Dkt. 39 at ¶¶ 103-106, 125-128. This is all the information Mr. Lonsdale knows, and could reasonably be expected to know, without discovery. Mr. Lonsdale has undoubtedly pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 129 S. Ct. at 1949 (citation omitted), and has provided Ms. Clougherty with "sufficient notice of the communications complained of to allow [her] to defend [herself]." *PAI*, 2007 WL 1229329, at *7 (citation and internal quotation marks omitted).

Mr. Lonsdale's allegations concerning Ms. Clougherty's statements to his ex-girlfriend and his ex-girlfriend's boyfriend stand on similar ground. Dkt. 39 at ¶¶ 107-114, 129-136. The only difference is that Mr. Lonsdale does not allege when the statements were made because he simply does not know. But he alleges that he only learned of the statements after February 1, 2014, which, as discussed below, is sufficient to satisfy the discovery rule. This is as much as Mr.

9

Lonsdale can allege without fact development during discovery—at which time more details will become known, both to Mr. Lonsdale and Ms. Clougherty.  Imposing any higher burden on Mr. Lonsdale would be contrary to Rule 8 and undermine any plaintiff's ability to bring defamation claims based on falsehoods spread behind the plaintiff's back.  *See Iqbal*, 129 S. Ct. at 1949 (interpreting Rule 8 to require only "a plausible claim for relief").

The cases cited by Ms. Clougherty do not undermine this principle.  Rather, they make clear that plaintiffs should provide the details they have about defamatory statements to give the defendant notice and an opportunity to understand the basis for the complaint, but they in no way require that the "when" and "where" be pleaded with exact "specificity."  Indeed, Ms. Clougherty has not identified *a single case* that dismissed a defamation claim solely because it failed to allege the "when" and "where" with "specificity."  Instead she selectively quotes from cases that, when taken as a whole, in fact support Mr. Lonsdale.

First, the primary case on which Ms. Clougherty relies, *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 04-cv-2562-JM, 2006 WL 4569360 (S.D. Cal. Feb. 6, 2006), actually confirms that Mr. Lonsdale's claims are sufficiently pleaded.  That court held that a libel claim *was* adequately pleaded when it included only the name of the speaker, the "time period of the statement, *where known*, the recipients of the statement, and the sustenance of the allegedly libelous statement (i.e. that [plaintiff] was a thief).  *Nothing else is required to state a libel claim*." *Id.* at *4 (emphases added).  Mr. Lonsdale has alleged this exact same type of facts.

Second, *Pentz v. Downey*, 110 F. Supp. 642 (E.D. Pa. 1953), is a 1953 Pennsylvania case that applies Rule 9, not Rule 8, and is thus entirely inapplicable.

Third, *PAI Corp. v. Integrated Science Solutions, Inc.*, held that a defamation claim was not adequately pleaded when it "failed to specifically identify who made the statements, when they were made and to whom they were made." 2007 WL 1229329, at *9.  That holding has no bearing here, where Mr. Lonsdale alleged that Ms. Clougherty made the statements, alleged the general timeframe of the statements when known, and alleged the person to whom the statements were made.  Ms. Clougherty misleadingly quotes *PAI* as stating that courts have dismissed defamation claims under Rule 8 where they failed to "allege . . . the time and place in which they

were made." Dkt. 48 at 5. But Ms. Clougherty's ellipses conveniently omit the words "the substance of the statements," which Mr. Lonsdale has alleged. *PAI*, 2007 WL 1229329, at *8. Indeed, of the nine cases cited for this proposition in *PAI*, *not one* involved a dismissal simply for failure to state when and where a defamatory statement occurred. Further, *PAI* noted that at least one court had refused to dismiss a defamation claim even though "the specific statements were not provided and there were no allegations regarding the time and place of the allegedly defamatory statements." *Id.*

Fourth, Ms. Clougherty relies on Wright and Miller, but again takes liberties with her selective quotations. Citing the statement that "[i]n libel and slander suits the time and place of the publication should be specifically stated in the complaint," Ms. Clougherty conveniently omits— without the necessary ellipses—the last part of Wright and Miller's sentence, which makes clear that this notion is not a universal rule, but only the holding of "a number of cases." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil*, § 1309 (3d ed. 2004) ("[I]n libel and slander suits the time when and the place of the publication of the alleged defamatory matter should be specifically stated in the complaint according to a number of cases."). Not one of the cases cited by Wright and Miller for this proposition is from a California court (either state or federal) or the Ninth Circuit, and not one of these cases dismisses a claim under Rule 8 based solely on failure to allege the when-and-where of the defamation, as opposed to some other defect (such as the failure to allege the speaker or recipient of the statements).[4] Wright and Miller also

---

[4]    *See Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1268 (M.D. Fla. 2008) (declining to exercise supplemental jurisdiction over defamation claim); *Heckman v. Zurich Holding Co. of Am.*, 06-cv-2435, 2007 WL 677607, at *6 n.11 (D. Kan. Feb. 28, 2007) (dismissing defamation claim for failure to "identify the communicator of the alleged defamatory words"); *Wiggins v. Hitchens*, 853 F. Supp. 505, 512 & n.9 (D.D.C. 1994) (dismissing defamation claim for "woefully deficient" pleading of "time, place, content, speaker and listener"); *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 495 (D.D.C. 1994) (dismissing defamation claim for failure to allege "when *or to whom* these false and defamatory statements were made" (emphasis added)); *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, 478-79 (D.D.C. 1994) (dismissing defamation claim for "wholly insufficient" pleading of "time, place, content, speaker and listener"); *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 458, 465 (D.D.C. 1994) (same); *Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1239 (D.N.J. 1994) (dismissing defamation claim not for "absence of any dates for the alleged defamation," rather, dismissal warranted because as pleaded the statute of limitations barred the claim);

---

11

note that other cases have reached the contrary conclusion. *Id.* n. 7.

The Court should deny Ms. Clougherty's motion regarding these counts. Ms. Clougherty has identified no case dismissing a defamation claim solely for failure to allege the specific time and place of the defamation. This is no surprise, as Mr. Lonsdale alleged as many facts as the victim of a smear campaign conducted in secret could reasonably be expected to allege at this stage of the proceedings. Those facts are more than sufficient for Ms. Clougherty to understand the nature of the claims and defend the case, *see PAI*, 2007 WL 1229329, at *7, and easily satisfy Rule 8's liberal pleading requirements.

**B.      Counts XI, XII, XIII, And XIV Are Based On Sufficiently Pleaded Defamation Claims**

Ms. Clougherty also argues that Mr. Lonsdale's causes of action for emotional distress and invasion of privacy (Counts XI, XII, XIII, and XIV) should be dismissed to the extent they are predicated on the above defamation *per se* and defamation claims. Because there is no basis to dismiss those defamation claims, there is no reason to dismiss the emotional distress and invasion of privacy claims.

Furthermore, even if the Court dismisses the defamation claims in Counts III, IV, V, VIII, IX, and X (and it should not), there is no reason to dismiss the emotional distress and invasion of privacy counts. Those counts are based not only on the defamation counts Ms. Clougherty challenges, but also on the defamation counts based on statements Ms. Clougherty made to the journalist, Ms. Bazelon, comments which were subsequently and foreseeably republished in The New York Times Magazine. *See* Dkt. 39 at ¶¶ 143-165. Ms. Clougherty recognizes as much. *See* Dkt. 48 at 3 (arguing only that these claims "should be dismissed in part, to the extent they are predicated on the above Defamation *Per Se* and Defamation claims for which Lonsdale fails to allege when and where the publications occurred").

---

*Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (dismissing defamation claim because "plaintiff does not set forth the content of the alleged statement, the speaker, or the listener," nor the time or place of the defamation); *Arvey Corp. v. Peterson*, 178 F. Supp. 132, 138 (E.D. Pa. 1959) (1959 case applying Rule 9); *Pentz v. Downey*, 110 F. Supp. 642 (E.D. Pa. 1953) (1953 case applying Rule 9).

OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS      Case No. 3:15-cv-00382-WHA

**C.      The Discovery Rule Applies To Counts IV, V, IX, and X, Which Are Timely**

Ms. Clougherty moves for the dismissal of Counts IV and V, which are claims for defamation *per se* for Ms. Clougherty's statements to Mr. Lonsdale's ex-girlfriend and her boyfriend, and Counts IX and X, which are claims for defamation for those same statements.  To the extent that Ms. Clougherty demands greater specificity for purposes of assessing the statute of limitations, *see* Dkt. 48 at 4, her concern over the date of Ms. Clougherty's false statements is misplaced.  What matters in a statute of limitations analysis are the dates on which the causes of action *arose*, which in this case are the dates that Mr. Lonsdale discovered the statements.

In California, the discovery rule provides that in certain circumstances "the accrual of a cause of action in tort is delayed until the plaintiff discovered (or reasonably should have discovered or suspected) the factual basis for his or her claim."  *Shively v. Bozanich*, 31 Cal. 4th 1230, 1248 (2003).  The discovery rule applies to defamation claims.  *Id.* at 1237 (noting that the discovery rule applies to defamation actions "when the defamatory statement is made in secret or is inherently undiscoverable"); *see also Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th 883, 894 (Cal. 2007) (discussing the discovery rule in the context of defamation suits).  California courts have assumed that the discovery rule applies to slander claims.  *See Burdette v. Carrier Corp.*, 158 Cal. App. 4th 1668, 1692 (2008); *McNair v. Worldwide Church of God*, 197 Cal. App. 3d 363, 379–380 (1987).  The *Shively* court explained the "equitable basis for applying the discovery rule—that a plaintiff should not forfeit a cause of action based on a confidential communication that he or she had no reasonable basis for discovering." *Shively*, 31 Cal. 4th at 1253.

That logic applies squarely to Mr. Lonsdale, who "had no reasonable basis for discovering" conversations Ms. Clougherty had in private with a Stanford professor, Mr. Lonsdale's ex-girlfriend, or Mr. Lonsdale's ex-girlfriend's current boyfriend.  Since Ms. Clougherty's statements were inherently secret and confidential, the statute of limitations was tolled until Mr. Lonsdale's discovery that they had been made.[5]  Here, therefore, Mr. Lonsdale's

---

[5]      *Shively* and *Hebrew Academy* both involved (1) published texts that (2) were publicly available, and in each case the Court recognized that the case would have stood differently had the defamatory statements been made, as here, in an "inherently undiscoverable" or

OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS      Case No. 3:15-cv-00382-WHA

injuries became actionable when he discovered the statements—which occurred within a year of filing his counterclaims.  Dkt. 39 at ¶¶ 105, 109, 113, 127, 131, 135.

Ms. Clougherty improperly cites *Burdette v. Carrier Corp.* for the proposition that "[s]tatements made in casual conversation do not fall within the discovery rule."  Dkt. 48 at 7. *Burdette*, however, held nothing of the sort.  To the contrary, the *Burdette* court assumed that the discovery rule applied to slander cases, and held only that the accrual of the defendant's cause of action for defamation was delayed "to the date he discovered or should have discovered a factual basis for his defamation claim."  *Burdette*, 158 Cal. App. 4th at 1692.  Under *Burdette*, therefore, the statute of limitations for Mr. Lonsdale's causes of action began to run only when he suspected or should have suspected that his "'injury was caused by wrongdoing [and] that someone has done something wrong to [him].'"  *Id.* (quoting *Bernson v. Browning–Ferris Indus.*, 7 Cal. 4th 926, 932 (1994)).  In Mr. Lonsdale's case, that time was only when he found out about the statements, which, as alleged in the Amended Counterclaims, was within the limitations period.  Dkt. 39 at ¶¶ 105, 109, 113, 127, 131, 135.

Ms. Clougherty mistakenly relies on *Howl v. Bank of America, N.A.*, No. C 11-0887 CW, 2011 WL 3610745, at *2 (N.D. Cal. Aug. 17, 2011), to support her argument that Mr. Lonsdale was obligated to plead the time and manner of discovery and "the inability to have made earlier discovery despite reasonable diligence."  That decision applies the discovery rule to a fraud claim for which a heightened pleading standard applies, as described above.  A claimant asserting defamation causes of action simply has no duty to plead to a fraud standard.  Moreover, Mr. Lonsdale in fact has pleaded the time and manner of his discovery of the defamatory statements. *See* Dkt. 39 at ¶¶ 70-77 (describing the circumstances in which Mr. Lonsdale learned of Ms. Clougherty's slander of him).  Likewise, it is apparent that even with reasonable diligence, Mr.

---

"inherently secretive" manner.  *Shively*, 31 Cal. 4th at 1237; *Hebrew Acad.,* 42 Cal. 4th at 894.  Thus, while *Shively* held that the statute of limitations expired because the statements at issue were public, that is clearly not the case here.  Mr. Lonsdale had no reasonable basis to discover or suspect Ms. Clougherty's defamatory statements in private conversations until third parties informed him they had taken place.  In contrast, he amended his counterclaims to include defamation causes of action based on The New York Times Magazine article, a publicly available text, less than one month after the article was published.

14

Lonsdale would have been unable to learn the subject matter of a private, spoken conversation until someone informed him of it.

**D.      Ms. Clougherty Is Not Entitled To A More Definite Statement Under Federal Rule Of Civil Procedure 12(e)**

Courts may grant a motion under Rule 12(e) only when the opposing party has pleaded claims that are "so vague or ambiguous that the [moving] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). As previously noted, a party pleading a defamation claim is held to the pleading standard of Rule 8, which requires only that a pleading provide a "short and plain statement of the claim" and is "simple, concise, and direct." Fed. R. Civ. P. 8(a) & (c).

Here, Mr. Lonsdale's counterclaims have most definitely provided Ms. Clougherty "with sufficient notice of the communications complained of to allow [her] to defend [herself]." *PAI*, 2007 WL 1229329, at *7 (citation and internal quotation marks omitted). The detail provided in Mr. Lonsdale's counterclaims, including the listener and the content of the statements—to the extent that information reached Mr. Lonsdale—has provided Ms. Clougherty with ample opportunity to defend herself. Dkt. 39 at ¶¶ 71-73, 103-114, 125-136. To the extent Ms. Clougherty's motion is based on her concern with the timeliness of the claims, a more definite statement under Rule 12(e) is unnecessary, as Mr. Lonsdale's claims are timely under the discovery rule. Finally, as Ms. Clougherty's statements to the Stanford professor, Mr. Lonsdale's ex-girlfriend, and the ex-girlfriend's boyfriend were made in secret, where time and place is unknowable to a plaintiff, Mr. Lonsdale has already re-pleaded his claims to include all of the factual details of which he is aware. He will only know more through discovery.

**V.      Conclusion**

Mr. Lonsdale has more than sufficiently alleged facts that state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. Indeed, only through discovery will he learn the additional details that Ms. Clougherty contends must be pleaded now.

Ms. Clougherty's motion should be denied in its entirety.

Dated: April 8, 2015　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By: /s/ Kristen Dumont

　　　　　　　　　　　　　　　　　　　　　　Kristen Dumont (SBN 191554)
　　　　　　　　　　　　　　　　　　　　　　**LAW OFFICES OF KRISTEN DUMONT**

　　　　　　　　　　　　　　　　　　　　　　Joseph R. Farris (SBN 263405)
　　　　　　　　　　　　　　　　　　　　　　Brenda Sharton (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　**GOODWIN PROCTER LLP**

　　　　　　　　　　　　　　　　　　　　　　Orin Snyder (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Emily C. Aldridge (SBN 299236)
　　　　　　　　　　　　　　　　　　　　　　Joseph Tartakovsky (SBN 282223)
　　　　　　　　　　　　　　　　　　　　　　Sarah Vacchiano (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　**GIBSON, DUNN AND CRUTCHER LLP**

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant and Counterclaimant Joseph Lonsdale*

16

CERTIFICATE OF SERVICE

I, Kristen Dumont, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on April 8, 2015.

Dated: April 8, 2015                                   /s/ Kristen Dumont

                                                       Kristen Dumont (SBN 191554)

I, Emily C. Aldridge, the ECF User whose ID and Password are being used to file this OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM, hereby attest that Kristen Dumont concurred in this filing.

Dated:  April 8, 2015                                              Respectfully submitted,


                                                                  /s/ Emily C. Aldridge

                                                                  Emily C. Aldridge (SBN 299236)
                                                                  ealdridge@gibsondunn.com

---

OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS        Case No. 3:15-cv-00382-WHA